### ÆOLIAN CO. v. SIMPSON–CRAWFORD CO.

(Circuit Court of Appeals, Second Circuit.    April 4, 1910.)

PATENTS (§ 328*)—INFRINGEMENT—PIANO PLAYER.

    The Wright patent, No. 596,730, for an improvement in automatic musical instruments which are controlled by rolls of perforated paper, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Æolian Company against the Simpson-Crawford Company.    Decree for defendant (173 Fed. 83), and complainant appeals.    Affirmed.

See, also, 157 Fed. 320.

Gifford & Bull (J. Edgar Bull, of counsel), for appellant.

Edward Rector, James Whittemore, and George D. Graves, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

NOYES, Circuit Judge.    The patentee states at the commencement of his specifications:

    "My invention relates to that class of automatic musical instruments which are controlled by rolls of perforated paper; and the object of my invention is to provide compact, simple, and efficient pneumatic-actuating devices for pianos or similar instruments."

In the instruments to which the patentee refers, a perforated music sheet passes over a board provided with a row of perforations which is called a "tracker-board."    When a perforation in the music sheet registers with a corresponding perforation in the tracker-board, a current of air flows through a passage connecting with that particular perforation and causes a striker to strike a corresponding string of the piano. The striking mechanism is called a "striker pneumatic."    The different notes are sounded in proper order and thus a tune is played.[1]

The feature of the invention of the patent to which attention is particularly directed in the first part of the specifications and which is covered by the first four claims relates to what is called in the defend-

<hr>

[1] These instruments may be operated either by the compression or exhaustion of air.    The instruments under consideration in the present case are operated by suction.    The language of the art is, however, confusing.    The term "compression" is often used when exhaustion is intended and a device is said to be operated by "compressed air" when in fact it is operated by the absence of air.    This use of terms should be borne in mind in reading the extracts from the patent and the discussion thereof.

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ant's brief the "action" of an automatic musical instrument. The vacuum chamber, the primary valve stems, the main pneumatics, the tracker-board, and its connecting passages are all elements of the invention described in these claims.

The claims in suit—5 and 6—relate to a comparatively minor and quite distinct feature of the invention. Indeed, it would not be too much to say that the patent covers a principal invention—the "action" of the instrument—and the distinct, although subsidiary, invention of the claims in issue. These claims read as follows:

"5. In a musical instrument, the combination of pneumatically-actuated operating devices, a main shut-off valve, a spring-pressed, auxiliary bellows or pneumatic, a pressure-regulating valve controlled thereby, and an independent controlling-valve, substantially as described.

"6. In a musical instrument, the combination of pneumatically-actuated operating devices, a main shut-off valve, 37, for cutting off the wind-pressure when the instrument is not in use or the paper is being rerolled, and controlling-valves, 42 and 43, one of said controlling-valves being connected to and actuated by a spring-pressed, auxiliary bellows, 46, and the other of said controlling-valves being capable of an independent action to provide a direct connection between the pneumatic devices and main bellows when desired, substantially as described."

The principal object which the patentee sought to accomplish by the invention of these claims is thus stated in the specifications:

"Pneumatic playing devices of that class to which my invention relates have heretofore ordinarily been directly connected to a bellows or pumping device for actuating the same. In practice I have found that it is not desirable to connect devices of this character directly to the bellows, as it is impossible to maintain an exactly constant air pressure by the use of bellows, and any variation therein will produce variations in the action of the pneumatic playing devices which are directly connected thereto. This form of connection I have also found to be objectionable, as the different chords or notes which are produced require different amounts of wind and a direct connection between the pneumatic playing devices and the bellows for operating the same will not provide any reserved capacity for producing those notes or chords which require a considerable volume of air. To overcome these objections, I have combined pneumatic playing devices constructed according to my invention with a controlling-valve, which is connected to and actuated from a supplemental spring-pressed bellows or pneumatic. By means of this construction a uniform air pressure will be maintained and the spring-pressed bellows or pneumatic will form a supplemental reservoir, which will act automatically to supply the wind-pressure required to produce heavy chords or notes."

From this statement it will be observed that the patentee was endeavoring to obviate the difficulties arising when the pumping bellows was directly connected with the playing device. These difficulties were twofold:

(1) A uniform and constant air pressure could not be obtained by the use of foot bellows, and this variation in the pressure would produce variations in the action of the playing device.

(2) A reserved supply of air could not be obtained for notes and chords requiring an unusual volume.

To obviate these difficulties the patentee provided: (a) "A controlling-valve." (b) "A supplemental spring-pressed bellows or pneumatic."

The latter element, in order to fulfil the purposes stated in the patent, had two functions: (a) To be connected to and actuate the controlling-valve. "By means of this connection a uniform air pressure will be

obtained." (b) To "form a supplemental reservoir which will act automatically to supply the wind-pressure required to produce heavy chords or notes." Or, as stated in another part of the specification:

"By means of this construction it will be seen that the spring-pressed bellows, 46, will act as a regulating device to control the suction or pressure exerted by the main bellows, and will also form a reservoir or reinforcing device for producing chords or notes requiring an unusual volume of wind."

The operation of the supplementary bellows is shown in the following illustration taken from the defendant's brief:

46 is the supplemental spring-pressed bellows. 47 is the spring. 41 is the port. Co-operating with the port is the controlling-valve, 43.

Suction being used, the spring is constantly trying to hold the bellows distended. As the suction increases in the passages leading to the player pneumatics, it collapses to some extent the bellows, 46, which, being connected with the controlling valve, 43, closes the port, 41, more or less, and diminishes the amount of air which can be drawn from such passage. But, as the suction thus decreases in the passage, the bellows is distended by the spring and the valve is opened and more air can be drawn from the passage. This operation and regulation goes on continually while the instrument is in use. The parts being properly adjusted, the supplemental bellows by actuating the controlling-valve maintains a uniform pressure in the passage leading to the player pneumatics, no matter how hard the pumping bellows may be worked. In other words—in the language of the patent—"a uniform air pressure will be obtained." In this manner the auxiliary bellows fulfils its function as a regulating device.

The auxiliary bellows fulfils its function of forming a supplemental reservoir in the following way: If a heavy chord or notes are struck, a suddenly increased volume of air is admitted to the left-hand passage. This diminishes the air exhaustion which is trying to collapse the auxiliary bellows, 46, against the action of spring, 47. Consequently the bellows at once expands and forms a "supplemental reservoir" to supply the suction necessary to the proper operation of the instrument. The "reserved capacity" which the patentee says is so desirable is provided.

In considering the question of infringement then, which may most conveniently first be taken up, we must look in the defendant's instrument for this supplemental spring-pressed bellows which appears as

an element of claim 5 as "a spring-pressed auxiliary bellows or pneumatic" and as an element of claim 6 as "a spring-pressed, auxiliary bellows, 46." It is true that the claims in issue contain other elements than those which we have been considering. There is a main shut-off valve which cuts off the wind pressure (suction) when the instrument is not in use, or the paper is being rerolled. So there is an independent controlling-valve to provide a direct connection between the pneumatic device and the main bellows, and so permit the "accenting" of notes. But it is unnecessary to consider these elements in the present case. If the defendant's instrument possess them all and do not possess the auxiliary bellows which we have considered, it does not infringe.

Now the primary difference between the defendant's structure and that of the patent is that in the former all the devices corresponding to the auxiliary bellows and controlled valves may be omitted, and still the pneumatic playing devices will not be directly connected with the pumping bellows. A storage bellows is interposed between them. This storage bellows serves as an air reservoir, and takes care of any unusual volume. Consequently the defendant's foundation structure was not subject to the objections pointed out by the patentee in his specifications. There was no necessity for employing a regulating device which should have the additional function of serving as an auxiliary reservoir because the storage bellows did all that was required.

The defendant does employ an auxiliary bellows to operate a regulating valve between the pumping bellows and the playing devices, but regulation is its only function. Its size and character are such that it cannot perform the reservoir function of the auxiliary bellows of the patent. It has no capacity to furnish the vacuum required for heavy notes or chords. It is capable of performing only one of the two functions required of the bellows of the patent. It is a regulating device and nothing else.

Summarized, the situation is this: The patentee took as the basis of his invention a structure having direct communication between pumping bellows and playing devices. He found two difficulties to overcome: (1) Variable suction; (2) want of reserve capacity to provide for heavy notes or chords. He overcame these two difficulties by employing an auxiliary bellows having two functions: (a) To regulate the suction by actuating a controlling-valve; (b) to serve as a reservoir for the supply of suction required for the heavy notes. The defendant, on the other hand, started with a structure in which there was not direct connection between the pumping bellows and the playing devices; a storage bellows being interposed. This storage bellows furnished all the reserved capacity required for heavy notes. Consequently the defendant had no difficulty to meet in this respect. But he did have difficulty of variable pressure to meet, and employed an auxiliary bellows and controlled valve for such purpose. This auxiliary bellows was not large enough to furnish reserved capacity for heavy notes, and was not designed for such purpose.

Under these conditions, it seems clear that the defendant is not guilty of infringement. Its structure does not possess the spring-pressed auxiliary bellows of the claims in issue, as that element must be defined in the light of the specifications. The auxiliary bellows of the defendant's structure is insufficient to fulfil the functions of the bellows of

the claims; It does not infringe because it can only do less than that which the patent requires. The one is in no sense the equivalent of the other.

In reaching these conclusions, we have, of course, fully considered the contention of the complainant that the "supplemental reservoir" of the specifications is not the auxiliary bellows of the claims, but the passage between the controlling-valve and the pumping bellows. In our opinion this contention is at variance with the language and drawings of the patent which clearly show that the bellows in and of itself is intended to form the reservoir. Indeed, language could hardly be plainer, and the bellows illustrated has ample capacity to act itself as a reservoir.

The decree of the Circuit Court is affirmed, with costs.